# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|   |   |
|---|---|
| DA DONG LIN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )    Case Number:  1:07CV1039 (JDB) |
|  | ) |
| ALBERTO R. GONZALES, United States | ) |
| Attorney General, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
_____ )

## MOTION TO DISMISS

Defendants, the United Sates Attorney General, et al., through undersigned counsel,

hereby move for dismissal of the complaint pursuant to Rule 12(b)(1) for lack of jurisdiction.  A

proposed order and memorandum of points and authorities are attached hereto.

Dated: September 14, 2007                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/ Robin M. Meriweather_____.
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                          |   |                          |
|--------------------------|---|--------------------------|
| DA DONG LIN,             | ) |                          |
|                          | ) |                          |
| Plaintiff,               | ) |                          |
|                          | ) |                          |
| v.                       | ) | Case Number:  1:07CV1039 (JDB) |
|                          | ) |                          |
| ALBERTO R. GONZALES, United States | ) |                   |
| Attorney General, et al.,| ) |                          |
|                          | ) |                          |
| Defendants.              | ) |                          |
|                          | ) |                          |
_____)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION AND SUMMARY

This case concerns a Form I-485 "adjustment of status" application filed by Plaintiff Da

Dong Lin, a Chinese citizen, in which Lin requested that Defendant United States Citizenship and

Immigration Services ("USCIS") exercise its discretion to make him a lawful permanent resident

of the United States.  Lin asks the Court to compel USCIS to adjudicate the application

immediately.  USCIS began processing Lin's application promptly, and requested that the FBI

conduct national security background checks.  USCIS received the results of the national security

checks on August 29, 2007 and has issued a notice informing Lin that it intends to deny the

application because he does not appear eligible for lawful permanent residency.  The notice gives

Lin an opportunity to respond within 33 days.  The Court lacks jurisdiction to compel USCIS to

immediately conclude its adjudication of Lin's I-485, and Lin's complaint must be dismissed.

The Immigration and Naturalization Act ("INA") does not permit this Court to review

USCIS's processing of Lin's application or compel it to complete the processing immediately.

In Section 1252(a)(2)(B) of the INA, Congress expressly withdrew judicial review of all issues concerning USCIS's "judgments" regarding the granting of an adjustment application, and all discretionary USCIS actions concerning adjustment applications and other immigration matters. 8 U.S.C. § 1252(a)(2)(B).  USCIS's decision to issue a notice informing Lin  that it intends to deny his application, and to provide him an opportunity to respond to the notice (instead of immediately denying the application) is a judgment and a discretionary action.  USCIS's determination that it needed to wait for the results of the national security checks also was a judgment and a discretionary action.  The INA's jurisdiction-stripping provisions apply "notwithstanding any other provision of law," thereby foreclosing reliance on alternative sources of jurisdiction like the Mandamus Act and the Administrative Procedures Act ("APA").  Id. Further, the APA expressly provides that if another statute forecloses judicial review of agency action, the APA cannot be used to challenge that agency action.  See 5 U.S.C. §§ 701(a), 702.

Even if the INA did not bar review under the Mandamus Act and the APA, the Court would still lack subject matter jurisdiction.  The extraordinary remedy of mandamus is available only if the plaintiff has a clear right to relief and the defendant owes the plaintiff a clear, nondiscretionary duty to act.  Lin has no right, let alone a clear one, to have his adjustment application adjudicated within any specific time frames.  Likewise, USCIS has no clear nondiscretionary duty to complete adjudication before the applicant responds to the USCIS notice that it intends to deny the application.  Those factors also prevent Lin from invoking the APA as a source of jurisdiction, because the APA precludes judicial review of actions and decisions over which Congress has given an agency plenary discretion.  That bar applies in any situation in which there is no "meaningful" statutory or regulatory standard against which to gauge the reasonableness of the agency's decision or of any delay in reaching a final decision.

2

There is no such standard here, as USCIS has complete discretion to issue notices of intent to deny and provide the applicant an opportunity to respond to the notice before completing adjudication of an I-485. There is no regulatory or statutory deadline for completing those adjudications.

## BACKGROUND

### A.    Statutory and Regulatory Background

The Immigration and Nationality Act permits the Attorney General "in his discretion and under such regulations as he may prescribe," to adjust the status of an alien "to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  Aliens like Lin that seek such adjustments of status file applications referred to as an "I-485."  See Compl. ¶ 1.  The procedures for admitted aliens to apply for adjustment of status are set forth at 8 C.F.R. part 245. Neither the statute nor the regulations establish a time frame in which adjudication must occur. The applicant must show that he is not inadmissible to the United States under any statutory ground of inadmissibility set forth at section 212(a) of the Immigration and Nationality Act, 8 U.S.C.

§ 1182(a), including health-related, criminal, terrorist, and other grounds. An alien seeking adjustment of status bears at all times the burden of persuading the Attorney General to exercise his discretion in the alien's favor.  See Randall v. Meese, 854 F.2d 472, 474 (D.C. Cir. 1988); Jain v. Immigration and Naturalization Service, 612 F.2d 683, 687 (2d Cir. 1979); see generally Elkins v. Moreno, 435 U.S. 647, 667 (1978) ("... adjustment of status is a matter of grace, not right ...").

Before a decision is rendered on an alien's I-485 application for adjustment of status, USCIS, in conjunction with the FBI, conducts several forms of security and background checks to ensure that the alien is admissible, is not a risk to national security, and merits a favorable

exercise of discretion.  <u>See</u> Decl. of Mary Flores, ¶ 1 (Exh. 1 hereto).  These checks currently include: (a) an FBI fingerprint check; (b) a check against the Interagency Border Inspection System (IBIS), which is managed by the Department of Homeland Security and contains records and "watch list" information from more than twenty law enforcement and intelligence agencies; and (c) an FBI name check. <u>Id.</u>; <u>see also</u> 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison" with the Directors of the FBI and CIA and with other internal security officer of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of the Immigration and Nationality Act in the interest of the internal and border security of the United States).

These security checks sometimes raise issues affecting an applicant's eligibility for an immigration benefit.  <u>See</u> Flores Decl. ¶ 2.  In those cases, USCIS must conduct further inquiry to resolve any outstanding issues, and in some cases may initiate proceedings to remove the alien from the United States.  <u>Id.</u> ¶ 3.  Significantly, derogatory information may be revealed by the IBIS or FBI name check that is not revealed by the fingerprint check alone.  <u>Id.</u> ¶¶ 2-4.  USCIS cannot proceed to adjudicate a request for permanent residence until all security checks have been completed, and until any and all issues that arise from those checks have been resolved.  <u>Id.</u> ¶ 5.

**B.**     **Lin's Application for Adjustment of Status**

Plaintiff Da Dong Lin, a native and citizen of China, filed a Form I-485 application to register permanent residence or adjust status on or around November 15, 2001, with United States Citizenship and Immigration Service's ("USCIS") Vermont Service Center.  <u>See</u> Compl. ¶ 2; Flores Decl. ¶ 6.  On or about December 3, 2002, USCIS requested that the FBI conduct background checks in connection with Lin's I-485.  <u>See</u> Flores Decl. ¶ 8.  USCIS received the results of the FBI name check on August 29, 2007.  <u>See id.</u> ¶ 9.  Lin's application was reviewed

4

upon completion of the checks.  USCIS has identified an issue regarding Lin's eligibility for adjustment of status, and has issued a notice to Lin describing the issue and providing him an opportunity to respond.  See Flores Decl. ¶¶ 11-12; Exh. 2 (Notice of Intent to Deny).

Lin initiated this action with a mandamus complaint filed June 12, 2007.  The complaint asks the Court to assume jurisdiction and compel USCIS to complete the processing of and render a final decision on Lin's I-485 application "immediately."  Compl. at 8 (prayer for relief). Plaintiff also seeks an award of attorney's fees.  See id.

## STANDARD OF REVIEW

Defendants move for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to review Lin's claims.  See Fed. R. Civ. P. 12(b)(1).  When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  In addition, plaintiff bears the burden of persuasion, and must establish subject-matter jurisdiction "by a preponderance of the evidence."  Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.  To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See Himbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Rann, 154 F. Supp. at 64.

Defendants also move for dismissal under Rule 12(b)(6), because plaintiff fails to state a

5

claim upon which relief can be granted. Rule 12(b)(6) requires dismissal if a plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (abrogating prior standard which required the moving party to show that plaintiff can prove no set of facts in support of its claim which would entitle it to relief). The Court must resolve all factual doubts in favor of the plaintiff, and allow the plaintiff the benefit of all inferences. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**ARGUMENT**

**I.    THE COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW LIN'S CLAIMS.**

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); see also Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (noting that district courts "have only such jurisdiction as the Constitution and the Congress grant them"). Lin's complaint must be dismissed because he has failed to establish a statutory basis for the Court to exercise jurisdiction over his claims. Congress has not authorized federal district courts to assume jurisdiction and direct USCIS to "immediately" adjudicate adjustment of status applications. Instead, Congress has expressly deprived courts of jurisdiction to review USCIS decisions like the one Lin challenges here. Section 1252 of the Immigration and Nationality Act ("INA") precludes judicial review of USCIS's "judgments" on applications for adjustment of status, and of numerous other discretionary decisions involving immigration-related applications and proceedings. 8 U.S.C. § 1252(a)(2)(B). That provision applies "notwithstanding any other provision of law," thereby trumping any alternative source of jurisdiction. Id.

6

Even if the INA did not preempt other sources of jurisdiction, there would be no such alternative source available here.  The discretionary nature of the adjudication of adjustment of status applications removes them from the scope of the Mandamus Act and the Administrative Procedures Act.  In sum, Congress has not given this Court the power to review USCIS's decision to issue a notice of intent to deny Lin's application and to afford Lin an opportunity to respond to the notice before a final decision issued.  Therefore, Rule 12(b)(1) requires that Lin's claims be dismissed.

### A.    The Immigration and Naturalization Act Does Not Confer Subject Matter Jurisdiction to Review USCIS's Processing of Pending Applications for Adjustment of Status.

The Court lacks jurisdiction to remand this case to USCIS for immediate adjudication of Lin's adjustment of status application, or to grant Lin any other form of relief.  Section 1252(a) of the INA expressly precludes judicial review of adjustment of status applications and other discretionary decisions.  Specifically, 8 U.S.C. § 1252(a)(2)(B), provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), section 2241 of title 28, United States Code, . . . and sections 1361 and 1641 of such title. . .no court shall have jurisdiction to review:
>
> (i)    any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be <u>in the discretion of the Attorney General or the Secretary of Homeland Security</u>, . . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

Plaintiff's attempt to compel the adjudication of his adjustment of status application falls squarely within the plain meaning of that provision.  First, the authority to adjudicate adjustment of status applications arises under 8 U.S.C. § 1255(a), and subsection (i) expressly bars judicial

7

review of "any judgment regarding the granting" of such an application.  8 U.S.C. §§ 1252(a)(2)(B)(i), 1255(a).  It follows that the Court cannot review USCIS's judgment that a notice of intent to deny should be issued, and that Lin should be afforded an opportunity to respond before USCIS makes a final decision on the application.

Second, USCIS's review of Plaintiff's adjustment of status petition is a discretionary action or decision covered by subsection (ii) of the jurisdiction-stripping provision.  Subsection (ii) applies to decisions or actions of USCIS and the Attorney General "the authority for which is under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  The INA commits the adjustment of an alien's status to the Attorney General's discretion.  See id. § 1255(a) (providing that an alien's status "may be adjusted by the Attorney General, in his discretion, and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence" if the alien meets certain criteria); see generally Elkins v. Moreno, 435 U.S. 647, 667 (1978) (describing adjustment of status as "a matter of grace, not right." ); Wallace v. Gonzales, 463 F.3d 135, 136 (2nd Cir. 2006 ) (noting same and that "the evaluation of such applications is left to the discretion of the Attorney General").  Accordingly, the INA deprives courts of jurisdiction to review decisions involving applications for adjustment of status.  See, e.g., Wilkinson-Okotie v. U.S. Dept. of Homeland Security, 2006 WL 2792405 at 3 (S.D. Tex. Sept. 26, 2006) ("Discretionary decisions involving applications for adjustment of status under 8 U.S.C. § 1255 are expressly included within the jurisdiction-stripping provision found in § 1252(a)(2)(B)(i)."); Dinsey v. Department of Homeland Security, No. 03-10081, 2004 WL 1698630, at * 4 (S.D.N.Y. 2004) (finding no jurisdiction over action to compel USCIS to adjudicate adjustment of status application because the INA "expressly places the adjustment of immigration status within the discretion of the

8

Attorney General"); see generally Zhu v. Gonzales, 411 F.3d 292, 294-96 (D.C. Cir. 2005)

(concluding 1252(a) precludes judicial review of Attorney General's discretionary decision to

require party to obtain labor certification prior to obtaining a work visa); Mahaveer, Inc. v.

Bushey, No. 04-1275, 2006 WL 1716723, at *3-*4 (D.D.C. June 19, 2006) (concluding 1252(a)

bars review of discretionary denial of visa).

 To the extent Lin's complaint can be construed as challenging the pace at which USCIS is

adjudicating his petition, that too involves a discretionary determination that cannot be reviewed

in this Court.  USCIS made the affirmative decision that adjudication of Lin's adjustment

application include the benefit and consideration of the results of the national security background

checks and  Lin's response to the notice of intent to deny his application.  See Flores Decl.

¶¶11-13.  The FBI recently completed those background checks and transmitted the results to

USCIS.  See id. ¶¶ 8-9.  USCIS has issued a notice to Lin identifying a deficiency in his

application, and affording him 33 days to respond.  See Flores Decl. ¶ 12. Thus this is not a case

in which an agency has refused to act.  Instead, the alleged delay is a direct consequence of

USCIS's conclusion that a complete a fair adjudication of Lin's application necessitates providing

Lin an opportunity to respond to its concerns regarding his eligibility for adjustment of status, and

that national security interests warrant background checks on applicants for legal permanent

resident status.  USCIS's decision to await the results of the background checks was both an

"action" under subsection (ii) of Section 1252(a)(2)(B) and a "judgment" under subsection (i).

See Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (finding initiation of

background checks was action); Safadi v. Howard, 466 F.Supp.2d 696, 699 (E.D.Va. 2006)

(same).  Similarly, the agency's issuance of a notice of its intent to deny Lin's application is an

"action" described by 8 U.S.C. 1252(a)(2)(B)(ii), and its determination that it should issue the

notice and give Lin an opportunity to respond instead of immediately denying the application is a

"judgment" as described by 8 U.S.C. 1252(a)(2)(B)(i).

There are no statutory time limits requiring USCIS to adjudicate an application within a

specific period of time.  See Zheng v. Reno, 166 F. Supp. 2d 875, 879 (S.D.N.Y. 2001) (noting

lack of time limits on adjustment of status applications); Mustafa v. Pasquerell, No. 5A05CA-

658-XR, 2006 WL 488399, at *4 (W.D. Tex. Jan. 10, 2006) (noting USCIS's "wide discretion . . .

in matters pertaining to the timing of the adjudication of petitions").  The lack of any legislative

time constraints is particularly significant given that the INA imposes specific time limits for

other immigration determinations.  See, e.g., 8 U.S.C. § 1447(b) (requiring that naturalization

applications be processed within 120 days after completion of an "examination").  In sum, "the

entire process of reviewing an adjustment application, including the completion of background

and security checks and the pace at which the process proceeds" is a 'discretionary action'

exempt from judicial review pursuant to Section 1252(a).  Safadi, 466 F.Supp. 2d at 700

(emphasis in original); see Zhang v. Chertoff, __ F. Supp.2d ___, 2007 WL 1753538, at *4 (W.D.

Va. June 19, 2007) (finding no jurisdiction to review challenge to delay in adjudicating

adjustment of status application because "the preclusion of judicial review over a discretionary

act of USCIS encompasses . . . the pace of this process"); Grinberg, 478 F. Supp. 2d at 1352

(concluding that "pace at which immigration decisions are made" is discretionary and finding no

jurisdiction to review challenge to delay in processing adjustment of status application).

Even if the suspension of further adjudication pending receipt of Lin's response to the

notice of intent to deny were an example of agency "inaction" — and it is not — judicial review

still would be barred by Section 1252(a)(2).  In other contexts, the D.C. Circuit has recognized

that challenges to an agency's "failure to act" are within the scope of statutory jurisdictional

provisions that govern agency "actions."  American Foreign Serv. Ass'n v. Baker, 895 F.2d 1460,

1461 (D.C. Cir. 1990) (noting court's prior holding that if appellate court has exclusive

jurisdiction to review agency action it also has exclusive jurisdiction to review challenges to

failures to act); Sierra Club v. Thomas, 828 F.2d 783, 791-93 (D.C. Cir. 1987) (concluding

challenge to pace of agency action was within appellate court's exclusive jurisdiction because the

appellate court would have jurisdiction over final agency decision).  Although those cases involve

a choice of forum, i.e., which court may review the (in)action, similar principles apply here,

where Congress has determined that no court may review the relevant (in)action.

        Defendants recognize that federal district courts are split on this issue, and that some

judges have concluded that they have jurisdiction to review the reasonableness of any delays in

completing adjudication of an I-485 petition.  Compare, e.g., Liu v. Novak, No. 07-263, ___ F.

Supp. 2d ___, 2007 WL 2460425 (D.D.C. Aug. 30, 2007) (exercising jurisdiction over claim

alleging unreasonable delay in resolving adjustment of status application); Alsharqawi v.

Gonzales, No. 06-1165, 2007 WL 1346667 (N.D. Tex. Mar. 14, 2007) (same) with Elzer v.

Mueller, No. 07-01666, 2007 WL 1221195 (E.D. Pa. Apr. 23, 2007) (dismissing challenge for

lack or jurisdiction); Grinberg, 478 F. Supp. 2d at 1352 (same).  However, the D.C. Circuit has

not yet addressed the issue, and the other courts' rulings are not binding on this Court.  Moreover,

those cases involve delays attributable solely to the pendency of national security background

checks, whereas the instant case involves a determination that Lin may not be eligible for

adjustment of status.  As the foregoing discussion makes clear, the INA's jurisdiction-stripping

provisions are best read as precluding judicial review of the allegations in Lin's complaint.

        **B.      No Other Statute Gives the Court Jurisdiction to Review Lin's Claims.**

        Even if some other statute conferred jurisdiction to review Lin's claims, the INA would

foreclose the exercise of that jurisdiction because it applies "notwithstanding any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(2)(A).  However there is no alternative source of jurisdiction in this case.  The Mandamus Act does not apply because the process employed in the adjudication of Lin's petition is a discretionary act.  The APA is inapplicable for similar reasons.

> **1.    The Mandamus Act Does Not Confer Jurisdiction Because The Manner in Which Lin's Application Is Adjudicated Is a Discretionary Decision.**

The Mandamus Act would not confer subject matter jurisdiction even if the jurisdiction stripping provisions of INA § 242 did  not apply.  That statute gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361. The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes."  Cheney v. United States District Court, 542 U.S. 367, 380 (2004) (internal quotations and citation omitted); accord Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). District courts may issue a writ of mandamus only if three elements are met: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (noting that defendant must owe plaintiff "a clear nondiscretionary duty" and that all other remedies must be exhausted).  Even when those factors are present, "a court may grant relief only when it finds 'compelling equitable grounds.'"  In re Medicare Reimbursement Litigation, 414 F.3d at 10.

Here, Plaintiff lacks a clear right to immediate conclusion of the adjudication process, and Defendant has no clear mandatory or ministerial obligation to adjudicate the application within a

particular time frame. See Safadi v. Howard, 466 F.Supp.2d at 700; Grinberg, 478 F. Supp. 2d at 1354. The decision whether to grant or deny Plaintiff's adjustment application is plainly discretionary by statute. See 8 U.S.C. § 1255(a). Surely, that discretion permits USCIS to issue a notice of intent to do deny Lin's application and to afford him an opportunity to respond to the notice before making a final decision on his application. Similarly, USCIS has discretion to enforce a background check requirement, thereby ensuring that immigration benefits are not granted to an alien ineligible for the benefit due to fraud, criminal convictions, or national security matters. There are no statutory provisions or regulations that mandate the adjudication of adjustment applications within a particular time frame. Consequently, USCIS has no clear, mandatory duty to adjudicate Plaintiff's application prior to completion of background checks or receipt of Lin's response to the notice of intent to deny, or to complete adjudication of adjustment applications by a prescribed deadline.

Those factors have led numerous district courts to find mandamus relief unavailable to compel immediate adjudication of applications for adjustment of status.1 See, e.g., Li, 482 F. Supp. 2d at 1177; Grinberg, 478 F. Supp. 2d at 1354; Safadi, 466 F. Supp.2d at 700; Saleh v. Ridge, 367 F. Supp.2d 508, 511 (S.D.N.Y. 2005); Karan v. McElroy, No. 02 Civ. 6678(JGK), 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003); Zheng v. Reno, 166 F. Supp.2d 875, 880-81 (S.D.N.Y. 2001); Sadowski v. INS, 107 F.Supp.2d 451, 453 (S.D.N.Y. 2000). This Court should do the same. Lin can establish no clear and indisputable right to have his adjustment of status application adjudicated within any specified time constraints, and USCIS has no obligation to adjudicate Lin's application before it has resolved the issues raised in the notice of intent to deny.

_____

1 In those cases, the applicants' national security background checks remained pending, and USCIS had determined that it could not complete its adjudication until it had received the results

Accordingly, Lin is not entitled to the extraordinary relief of mandamus, and cannot rely on the Mandamus Act as a source of jurisdiction.

> **2.        The Administrative Procedures Act Does Not Permit This Court to Review Plaintiff's Claims.**

Lin also has no right to judicial review under the APA.  Although the APA is not an independent source of subject matter jurisdiction, it operates in tandem with federal question jurisdiction under 28 U.S.C. § 1331 to permit courts to review challenges to certain agency actions.  See Califano v. Sanders, 430 U.S. 99, 107 (1977); Grinberg, 478 F. Supp.2d at 1355; Galluci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005).  However, the APA expressly precludes judicial review of agency actions in two circumstances: (1) if another statute "preclude[s] judicial review;" and (2) when "agency action is committed to agency discretion by law."  5 U.S.C.

§ 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).  Both factors prevent Lin from using the APA as a means of challenging USCIS's processing of his adjustment application.

First, as discussed above, the INA bars judicial review of Lin's claims.  Accordingly, Section 701(a) of the APA, which "withdraws [an APA] cause of action" to the extent another statute "precludes judicial review," prevents Lin from raising an APA challenge.  Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984); see 5 U.S.C. § 701(a); Beyond Pesticides v. Whitman, 360 F. Supp. 2d 69, 71 (D.D.C. 2004).  Section 702 forecloses judicial review of Lin's claims for the same reason, as it provides that "nothing herein affects other limitations on judicial review . . . or confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.

_____

of those background checks.

Second, the APA bars judicial review because the USCIS actions Lin has challenged are discretionary. The APA generally permits challenges to "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see also id. § 555(b) (indicating that agencies should conclude matters "within a reasonable time"). However, such claims are unreviewable by the courts if the relevant agency action is "committed to agency discretion by law." Id. § 701(a)(2). In Heckler v. Chaney, the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. 821, 830 (1985). As the Court explained, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" Id.; see also Steenholdt v. Federal Aviation Admin., 314 F.3d 633, (D.C. Cir. 2003) (articulating same standard). "The principal purpose of the APA limitations . . . and of the traditional limitations upon mandamus from which they were derived—is to protect agencies from undue judicial interference with their lawful discretion . . . ." Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004).

Lin has no APA cause of action for "unreasonable agency delay" because the timing of USCIS's adjudication of his adjustment of status application is expressly committed to agency discretion, as are all other aspects of processing of the application. Section 1255(a) permits the Attorney General to adjust an alien's status "in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a) (emphasis added). That is the type of "plenary" grant of discretion which renders agency actions unreviewable under the APA. Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151, 157 (D.C. Cir. 2006). No statutory or regulatory provisions provide a "meaningful standard" against which to measure USCIS's process of adjudicating such

15

an application.  Heckler, 470 U.S. at 830.  Rather, the agency maintains complete discretion to

determine "how and when" to adjudicate the application.  See id.  In contrast with certain other

immigration provisions, e.g., 8 U.S.C. § 1447(b), the statute and regulations governing Plaintiff's

adjustment of status application provide no time frame for when such an application must be

adjudicated.  See Zheng v. Reno, 166 F.Supp.2d at 879 ("[T]here is no requirement that the

application be decided within a specific period of time[.]").  Consequently, there is no standard

against which the Court can measure whether the Agency has acted "within a reasonable time," 5

U.S.C. § 555(b), or "unreasonably delayed" adjudication, id. § 706(1).

     Given the absence of a specified time frame for adjudicating adjustment applications, the

Court should find that Section 701(a)(2) of the APA precludes review of Lin's claims.  That

ruling would be in accord with other courts' conclusion that claims relating to alleged delays in

the adjudication of an adjustment of status application are unreviewable under the APA because

the adjudicatory process is committed to agency discretion by law.  See Safadi v. Howard, 466

F.Supp.2d at 700; Zheng, 166 F.Supp.2d at 878-89; Karan v. McElroy, 2003 WL 21209769, at *1

("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion

of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff

seeks."); see also Rahman v. McElroy, 884 F.Supp. at 787-88.   In addition, at least two Supreme

Court cases suggest that the presence of a specified time period triggers courts' ability to compel

agency action that is "unreasonably delayed" under § 706(1).  See Norton v. Southimn Utah

Wilderness Alliance, 542 U.S. at 65 ("Thus, when an agency is compelled by law to act within a

certain time period . . . a court can compel the agency to act . . . ."); Brock v. Pierce County, 476

U.S. at 260 n.7 (finding that because "the statutory command that the Secretary 'shall' act within

120 days does not commit such action to the Secretary's discretion, . . . [t]he court would have the

authority to 'compel agency action unlawfully withheld or unreasonably delayed,' § 706(1)").

Without any mandatory time frame to adjudicate Plaintiff's claim that USCIS has "unreasonably delayed" adjudication of his application, this Court would have to create a temporal standard out of whole cloth.  This is a perilous task given the national security considerations that affect USCIS's adjudicative process.  It is a well-established proposition that judicial review of immigration matters is narrowly circumscribed, and that control over immigration is largely entrusted to the political branches of the government.  See United States v. Valenzuela-Bernal, 458 U.S. 858, 864 (1982); Mathews v. Diaz, 426 U.S. 67, 81 (1976) ("Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary.").  Moreover, as other courts have cautioned, in "'matters solely within the INS's discretion[,] . . . aside from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.'"  Rahman, 884 F. Supp. at 787 (quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978)); see also Heckler, 470 U.S. at 831-82 (noting that "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities").  Those principles counsel against the imposition of a judicially-created standard to gauge how long USCIS may wait for assurance that the background checks have identified no national security reasons that would merit denial of an applicant's adjustment petition, or how long USCIS may give the applicant to respond to its concerns about issues of eligibility.

**CONCLUSION**

Defendants respectfully request that the Court DISMISS the complaint for lack of

jurisdiction.

Dated: September 14, 2007                  Respectfully submitted,


                                           _____/s/_____
                                           JEFFREY A. TAYLOR, D.C. BAR # 498610
                                           United States Attorney

                                           _____/s/_____
                                           RUDOLPH CONTRERAS, D.C. BAR #434122
                                           Assistant United States Attorney

                                           _____/s/ Robin M. Meriweather_____
                                           ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                           Assistant United States Attorney
                                           555 Fourth St., N.W.
                                           Washington, D.C.  20530
                                           Phone: (202) 514-7198   Fax: (202) 514-8780
                                           Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Suzanne McGregor
Regional Counsel
USCIS, Eastern Region
70 Kimball Ave.
South Burlington, VT 05403

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of September, 2007, I caused the foregoing Motion to

Dismiss to be filed and served via the Court's Electronic Case Filing system or, should I receive

notice from the ECF system that electronic service was unsuccessful, to be served upon plaintiff

by first-class mail, postage prepaid, addressed as follows:

Mark A. Mancini
Wasserman, Mancini, & Chang P.C.
1915 I Street NW Suite 400
Washington DC 20006

                    /s Robin M. Meriweather
              ROBIN M. MERIWEATHER, D.C. Bar # 490114

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                            )
DA DONG LIN,                                )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )    Case Number:  1:07CV1039 (JDB)
                                            )
ALBERTO R. GONZALES, United States          )
 Attorney General, et al.,                  )
                                            )
                    Defendants.             )
                                            )
_____)

## ORDER

Upon consideration of Defendants' Motion to Dismiss, it is this _____ day of

_____, 2007,

ORDERED that Defendants' Motion to Dismiss be and is hereby GRANTED.

It is further ORDERED that this case be and is hereby DISMISSED.

SO ORDERED.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Da Dong Lin, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:07 cv 1039 (JDB) |
| | ) | |
| Alberto Gonzales, | ) | |
| Attorney General of the | ) | |
| United States of America, *et al.,* | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION OF MARY FLORES

Pursuant to 28 U.S.C. § 1746, Mary Flores declares under penalty of perjury as follows:

I, Mary Flores, hereby declare:

I am the Acting Field Office Director of the Washington District Office, located in Fairfax, Virginia, of the United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security (DHS).[1] My permanent position is Supervisory District Adjudications Officer (SDAO). As Acting Field Office Director and as a SDAO, I oversee the adjudication of applications for immigration benefits, including applications for adjustment of status. I have held the position of Supervisory District Adjudications Officer since May 15, 2006. As Acting Field Office Director and as SDAO, and based upon reasonable inquiry and my knowledge, information and belief, I state the following:

(1)    When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the benefit

---

[1] I am Acting in the position of Field Office Director on this date as Field Office Director, Susan Dibbins is out of the office.

1

and that he or she is not a risk to national security or public safety. In addition to record checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity. No immigration benefit (e.g., adjustment of status, naturalization/U.S. citizenship) is granted unless and until all the above-required background checks have been completed and resolved.

(2)     These law enforcement checks can reveal significant derogatory information concerning alien applicants for immigration benefits, including applicants seeking adjustment of status. Such checks have resulted in alien applicants being found ineligible for the benefit sought, and in the USCIS's denial of the application. In some instances, the disqualifying information concerning the alien has been discovered as a result of the IBIS or FBI name checks, when it had not been revealed by a fingerprint check alone.

(3)     If a background or security check reveals verified derogatory information on the alien (i.e., a positive result), the USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory record. Depending on the information, DHS/ICE may place the alien in immigration proceedings to remove him or her from the United States.

(4)     Although an alien's file may show that an FBI fingerprint check was performed, the fingerprint checks frequently do not reveal the types of derogatory

information described above, particularly when it is not information that has resulted in an arrest or criminal conviction. For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.

(5)    It would be unconscionable and potentially risk the safety and security of the nation for USCIS to grant United States lawful permanent resident status to anyone without first ensuring that the government's law enforcement databases do not contain verified derogatory information about the alien. With lawful permanent resident status, a person who is a risk to the public or the nation's security could obtain work in sensitive industries and travel on transportation carriers more easily.

(6)    The applicant, Da Dong Lin, A72-019-964, filed his form I-485, Application to Register Permanent Residence or Adjust Status on or around November 15, 2001.

(7)    The applicant's adjustment application is based upon a form I-140, petition for alien worker, which was filed on his behalf by his prospective employer, the Silver Fountain Restaurant, and approved on August 15, 2001.

(8)    FBI name checks were initiated on the applicant on or around December 3, 2002. A request to expedite this name check was not filed with the FBI. Expedite requests require additional fees to be paid to the FBI by USCIS and USCIS is limited by the FBI as to the number of requests that can be made. Therefore, such requests are only made in exceptional circumstances. On February 20, 2007 USCIS posted a clarification of the criteria used to expedite FBI name checks on its public website. This clarification made clear that pending litigation was removed as the sole basis to support an expedite request. USCIS may continue to request an expedited FBI name check for a case in litigation if it meets one of several other approved criteria, including, but not limited to: 1. Military deployment;  2. Age-out cases not covered under the Child Status Protection

3

Act, and applications affected by sunset provisions such as diversity visas; 3. Significant and compelling reasons, such as critical medical conditions, and 4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

(9)    USCIS received the results of the FBI name checks on August 29, 2007.

(10)    FBI fingerprint checks of the applicant were submitted to the FBI on April 18, 2007. USCIS received the results of that fingerprint check from the FBI on April 19, 2007. The FBI fingerprint checks must be completed for each alien applicant for an immigration benefit, as required by public law 105-119. Pursuant to current USCIS policy, fingerprints so taken are valid for a period of 15 months after processing by the FBI. Therefore, the fingerprints are set to expire on July 17, 2008.

(11)    IBIS checks were initiated on the applicant on November 17, 2003, and again on August 2, 2007, and have been concluded.

(12)    Upon receipt and analysis of the results of the security checks, a complete review of the application was conducted. USCIS is not convinced of the applicant's eligibility for adjustment of status.

(13)    On September 13, 2007, USCIS issued a notice to the applicant advising him of the deficiencies in his application and providing him an opportunity to respond to same.

(14)    Upon receipt of the applicant's response to the notice of intent to deny his application, USCIS will review Mr. Lin's adjustment application and his response to the notice and complete its adjudication as expeditiously as possible.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.  Executed on this Thirteenth day of September, 2007.

Mary Flores, SDAO
Acting Field Office Director
Fairfax, Virginia Office
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security

**U.S. Department of Homeland Security**
2675 Prosperity Avenue
Fairfax, VA 22031



**U.S. Citizenship
and Immigration
Services**

Date: September 13, 2007

Da Dong Lin                                     File Number: A 752019964
7154 Six Pond Lane                              Receipt Number: EAC0503855559
Mechanicsville, VA 23116

### NOTICE OF INTENT TO DENY ADJUSTMENT APPLICATION

This letter will serve as notice of the United States Citizenship and Immigration Service's
(Service) intent to deny the Application to Register Permanent Residence or Adjust Status
(Form I-485) you filed on November 15, 2001. You claim eligibility to adjust your status based
on an Application for Alien Employment Certification (ETA 750) and an Immigrant Petition for
Alien Worker (Form I-140), both filed by Silver Fountain Restaurant of Wheaton, Maryland.

The ETA 750 was signed by John Cheng on December 1, 1997, claiming to be the president of
Silver Fountain Restaurant. The Form I-140 was filed on or about November 16, 2000. Service
records indicate the Form I-140 was mailed to "Mr. John Cheng President".

A Service officer spoke to Albert Dan, the president and owner of the Silver Fountain
Restaurant. Mr. Dan stated the following information which directly pertains to your
adjustment of status case:

- John Cheng did work for Silver Fountain Restaurant for a period of approximately two
  weeks at least twenty years ago.
- John Cheng did not work for Silver Fountain Restaurant in 1997 when the ETA 750
  was filed.
- John Cheng did not work for Silver Fountain Restaurant in 2001 when the Form I-140
  was filed.
- During the time John Cheng worked for the Silver Fountain Restaurant, he did not
  have any authority to hire, fire, reward or discipline employees; he was merely helping
  out.
- Albert Dan and his son, Andrew Dan failed to recognize you name as an employee at the
  Silver Fountain Restaurant.

It is apparent John Cheng was not authorized to file an ETA 750 for the Silver Fountain
Restaurant. The above reference information leads the Service to conclude the ETA 750 filed
on your behalf on December 1, 1997 was not filed in accordance with the controlling regulation
Title 20, Code of Federal Regulations (20 CFR), Part 656. Nor was he permitted to file the
Form I-140. Consequently, you do not appear to be eligible to adjust your status to that of a

Applicant: Da Dong Lin                                                          A 72019964

lawful permanent resident based on the referenced documents.  It is the Service's contention that John Cheng either fraudulently signed and filed the ETA 750 and the Form I-140, or he misrepresented a material fact when he signed and filed the ETA 750 and the Form I-140.

It is the Service's intent to invalidate the ETA 750 pursuant to 20 CFR, Section 656.30(d) which provides in pertinent part:

> After issuance labor certifications are subject to invalidation by the INS [now the United States Citizenship and Immigration Services] or by a Consul of the Department of State upon a determination, made in accordance with those agencies, procedures or by a Court, of fraud or willful misrepresentation of a material fact involving the labor certification application.

Once the ETA 750 is invalidated, the alien is no longer a beneficiary of a valid labor certification and is not eligible to benefit from the Form I-140 that the labor certification was supporting due to 8 CFR 204.5(l)(3) which provides in pertinent part:

> (i) Labor certification or evidence that alien qualifies for Labor Market Information Pilot Program. Every petition under this classification must be accompanied by an individual labor certification from the Department of Labor, by an application for Schedule A designation, or by documentation to establish that the alien qualifies for one of the shortage occupations in the Department of Labor's Labor Market Information Pilot Program. To apply for Schedule A designation or to establish that the alien's occupation is a shortage occupation with the Labor Market Information Pilot Program, a fully executed uncertified Form ETA-750 in duplicate must accompany the petition. The job offer portion of an individual labor certification, Schedule A application, or Pilot Program application for a professional must demonstrate that the job requires the minimum of a baccalaureate degree.

The Service is affording you thirty-three days from the date of this notice to submit proof that will establish by a preponderance of the evidence that John Cheng was the president of the Silver Fountain Restaurant, and that he was authorized to file an ETA 750 and a Form I-140 on your behalf in 1997 and 2001 respectively.  Please submit response to the address listed on the letterhead of this notice.  No evidence submitted outside the allotted thirty-three day period will be considered.

Sincerely,

Susan Dibbins
Field Office Director


cc: Wasserman, Mancini & Chang
gg

2